USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _12/20/17_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**ANDREA SHEPARD & SHIRLEY SHEPARD,**

Plaintiffs,

– against –

**EUROPEAN PRESSPHOTO AGENCY, ALAMY
LIMITED, ALAMY, INC. and JOHN DOES
(1-5),**

Defendants.

17 Civ. 4434 (LLS)

**OPINION & ORDER**

This case arises from defendants' alleged unauthorized
publication of artworks authored by plaintiffs. Plaintiffs
assert four claims for relief: (1) copyright infringement, (2)
false designation of origin, (3) breach of contract, and (4)
unfair competition. Defendants move, under Rule 12(b)(6) of the
Federal Rules of Civil Procedure, to dismiss the second, third,
and fourth counts for failure to state a claim upon which relief
can be granted, on the grounds that those claims are preempted
by the Copyright Act. For the reasons that follow, the motion is
granted in part and denied in part.

## BACKGROUND

The following facts are as alleged in the complaint (Dkt.
No. 1).

Plaintiffs Andrea Shepard and Shirley Shepard are courtroom
artists who create pastel drawings featuring public figures and
celebrities during courtroom proceedings. Compl. ¶¶ 1-2. The

Shepards earn a living from the sale of their artworks, which have gained significant accolades and recognition over the years. Id. ¶ 3.

Defendant European Pressphoto Agency is an international news photo service that maintains a large archive of pictures. Id. ¶ 4. European Pressphoto Agency's website states that its pictures are "generated by a network of more than 400 photographers worldwide." Id. ¶ 4, Ex. 2. Between 2003 and 2012, European Pressphoto Agency entered into licensing agreements with the Shepards. Id. ¶ 4.

Defendant Alamy Limited is a stock photograph agency headquartered in the United Kingdom that archives, markets, and sell images. Id. ¶ 5. Defendant Alamy, Inc. is a New York corporation that distributes Alamy Limited's images throughout the United States. Id. ¶ 6. Alamy Limited and Alamy, Inc. have no licensing agreements with the Shepards. Id. ¶¶ 5-6.

Between 2005 and 2012, the Shepards created pastel drawings featuring Zacarias Moussaoui, Haji Bashir Noorzai, Tarik Shah, Tim Donaghy, Faisal Shahzad, Christopher Coke, Khaled Al Fawwaz, Abdel Bary, Abu Hama Al Masri, and ten individuals accused of espionage on behalf of the Russian Federation. Id. ¶¶ 12-14, 17-21. They licensed those works to European Pressphoto Agency for one day only. Id. During that time, the Shepards also created pastel drawings featuring Russell Crow and Michael Ray Aquino,

and licensed those works to one or more of the John Doe defendants for one day only. Id. ¶¶ 15-16.

European Pressphoto Agency published the artworks that it licensed from the Shepards after the expiration of the one day license, without the Shepards' authorization. Id. ¶ 23-24, 36. Alamy Limited published a number of the Shepards' artworks without the Shepards' authorization, and never having obtained licenses from the Shepards. Id. ¶¶ 25-35, 37. Additionally, Alamy Limited imprinted an Alamy watermark on the images of the Shepards' artworks published on its website and inaccurately represented them as "royalty-free." Id. ¶ 37.

The Shepards hold copyright registrations for the above artworks from the United States Copyright Office. Id. ¶ 22.

The Shepards claim that (1) defendants' unauthorized publication of their artworks constitutes copyright infringement, (2) European Pressphoto Agency's listing the copyrighted images as part of a network and Alamy Limited's imprinting the images with its Alamy watermark constitute false designation of origin in violation of the Lanham Act, (3) European Pressphoto Agency's use of the artworks after the one day license is a breach of contract, and (4) defendants' exceeding the scope of the one day licenses and wrongfully labeling the artwork as their own is unfair competition under New York law. Id. ¶¶ 39-60.

Defendants argue that even if the underlying allegations are true, the claims for false designation of origin, breach of contract, and unfair competition must be dismissed because they are preempted by the Copyright Act.

## DISCUSSION

### 1. False Designation of Origin

Section 43(a) of the Lanham Act "prohibits, inter alia, misrepresentation likely to cause confusion about the source of a product." Scholastic, Inc. v. Stouffer, 124 F. Supp. 2d 836, 841 (S.D.N.Y. 2000). It provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

"A party establishes liability under Section 43(a) of the Lanham Act if it can demonstrate '(1) that it has a valid trademark entitled to protection under the Act, and (2)

defendant's actions are "likely to cause confusion."'" Estate of
Ellington ex rel. Ellington v. Harbrew Imports Ltd., 812 F.
Supp. 2d 186, 192 (E.D.N.Y. 2011), quoting Phillip Morris USA
Inc. v. Marlboro Express, No. 03 Civ. 1161 (CPS), 2005 WL
2076921, at *4 (E.D.N.Y. Aug. 26, 2005).

The Shepards allege that European Pressphoto Agency's
listing the Shepards' images as part of a network and Alamy
Limited's imprinting the images with its Alamy watermark are
likely to cause confusion as to the source of their images in
violation of section 43(a).

Defendants argue that the Shepards' Lanham Act claim is
foreclosed by the Supreme Court's holding in Dastar Corp. v.
Twentieth Century Fox Film Corp., 539 U.S. 23, 123 S. Ct. 2041
(2003). Dastar "addresses the interplay between copyright—which
protects authors' rights in their creations—and unfair
competition laws—which protect consumers from, inter alia,
confusion as to the origin of goods." Vaad L'Hafotzas Sichos,
Inc. v. Krinsky, 133 F. Supp. 3d 527, 538 (E.D.N.Y. 2015). In
Dastar, Dastar produced an edited version of the television
series "Crusade in Europe" under its own name, without
referencing or giving credit to the creators of the Crusade
series. Dastar, 539 U.S. at 26-27, 123 S. Ct. at 2044. New Line
Home Video, Inc., which held the exclusive right to distribute
the Crusade series on video, sued under the Lanham Act for false

-5-

designation of origin. Id. at 27, 123 S. Ct. at 2044-45. The
Supreme Court held that New Line could not recover for false
designation of origin because the term "origin of goods" as used
in the Lanham Act "refers to the producer of the tangible goods
that are offered for sale, and not to the author of any idea,
concept, or communication embodied in those goods." Id. at 37,
123 S. Ct. at 2050. Under that holding, "The right to copy
creative works, with or without attribution, is the domain of
copyright, not of trademark or unfair competition." Freeplay
Music, Inc. v. Cox Radio, Inc., 409 F. Supp. 2d 259, 263
(S.D.N.Y. 2005), citing Dastar, 539 U.S. at 33, 123 S. Ct. at
2048. Defendants maintain that Dastar's holding requires
dismissal of the Shepards' Lanham Act claim because it involves
drawings which are subject to copyright law.

That argument is unavailing here because the Shepards also
sell their artworks. Compl. ¶ 3. They are not only the authors
of creative works (whose creative elements are protected by
copyright) but also the producers of tangible goods that are
offered for sale (whose makers have rights to be identified as
their source), and as such, are able to assert a Lanham Act
claim for false designation of origin. As the Supreme Court
stated in in Dastar: "That claim would undoubtedly be sustained
if Dastar had bought some of New Line's Crusade videotapes and
merely repackaged them as its own." Dastar, 539 U.S. at 31, 123

S. Ct. at 2046. As alleged, defendants obtained tangible goods (whether or not their creative value entitles them to copyright protection) that the Shepards created and sell (or copies of them), and falsely represented themselves as their source.

Defendants argue that Alamy's watermark indicates only that Alamy is "'the originator of the website' on which the images at issue appeared" and does not indicate that Alamy is the source of the drawing. Memo. (Dkt. No. 19) at 4; Reply (Dkt. No. 21) at 4, citing Michael Grecco Photography, Inc. v. Everett Collection, Inc., 589 F. Supp. 2d 375, 387 (S.D.N.Y. 2008) (vacated in part on other grounds).

That argument is beyond the scope of this motion. On a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor." Austin v. Town of Farmington, 826 F.3d 622, 625 (2d Cir. 2016), citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). The Michael Grecco case cited by defendants was decided on the evidence on a motion for summary judgment. Here, no evidence has been offered. The complaint alleges that defendants have misrepresented the source of pastel drawings that the Shepards offer for sale. Compl. ¶¶ 3, 49. Whether that is true or not may be in dispute. But as pleaded, it states a claim to relief under the Lanham Act that is distinct from, and not foreclosed by, the copyright

-7-

infringement claim.

## 2. Breach of Contract

The Shepards allege that European Pressphoto Agency breached the parties' licensing agreement by publishing and distributing the Shepards' artworks beyond the expiration of the one day license. Defendants argue that the breach of contract claim is preempted by the Copyright Act.

"When Congress revised the copyright laws in 1976, it specifically provided for preemption of all state rights equivalent to those within the scope of federal copyright law." Am. Movie Classics Co. v. Turner Entm't Co., 922 F. Supp. 926, 930 (S.D.N.Y. 1996). Section 301 of the Copyright Act provides:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).

As the Second Circuit has stated:

> The Copyright Act exclusively governs a claim when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106. See 17 U.S.C. § 301(a); Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 848 (2d Cir. 1997). The first prong of this test is called the "subject matter requirement,"

-8-

and the second prong is called the "general scope requirement."
See Nat'l Basketball Ass'n, 105 F.3d at 848.

The subject matter requirement is satisfied if the claim applies
to a work of authorship fixed in a tangible medium of expression
and falling within the ambit of one of the categories of
copyrightable works. Id. at 848-49. * * * *

The general scope requirement is satisfied only when the state-
created right may be abridged by an act that would, by itself,
infringe one of the exclusive rights provided by federal
copyright law. Computer Assocs. Int'l, Inc. v. Altai, Inc., 982
F.2d 693, 716 (2d Cir. 1992). In other words, the state law
claim must involve acts of reproduction, adaptation,
performance, distribution or display. See 17 U.S.C. § 106;
Computer Assocs., 982 F.2d at 716.

Further, the state law claim must not include any extra elements
that make it qualitatively different from a copyright
infringement claim. See Nat'l Basketball Ass'n, 105 F.3d at 851;
Computer Assocs., 982 F.2d at 716. To determine whether a claim
is qualitatively different, we look at "what [the] plaintiff
seeks to protect, the theories in which the matter is thought
to be protected and the rights sought to be enforced." Computer
Assocs., 982 F.2d at 716. Moreover, we take a restrictive view
of what extra elements transform an otherwise equivalent claim
into one that is qualitatively different from a copyright
infringement claim. See Nat'l Basketball Ass'n, 105 F.3d at 851.
Awareness or intent, for instance, are not extra elements that
make a state law claim qualitatively different. Id.; Computer
Assocs., 982 F.2d at 717. On the other hand, a state law claim
is qualitatively different if it requires such elements as breach
of fiduciary duty, see id., or possession and control of
chattels, see Harper & Row, Publishers, Inc. v. Nation Enters.,
723 F.2d 195, 201 (2d Cir. 1983), rev'd on other grounds, 471
U.S. 539, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985).

Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296,

305-06 (2d Cir. 2004) (brackets in Briarpatch).

Here, the first requirement is met as the artworks in

question fall within the type of works protected by the

Copyright Act under 17 U.S.C. § 102. The second requirement is

also met because the Shepards' state law breach of contract

-9-

claim seeks to vindicate rights already protected by copyright law under 17 U.S.C. § 106, namely, the exclusive rights to reproduce the copyrighted work, distribute copies, and to display the copyrighted work publicly. Specifically, as alleged, European Pressphoto Agency breached the contract by reproducing, distributing, and displaying the Shepards' artworks beyond the one day license period. Compl. ¶ 55. Reproducing and distributing the artworks is "an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law." Briarpatch, 373 F.3d at 305; 17 U.S.C. § 106. The issue is therefore whether the elements needed to establish the breach of contract claim are qualitatively different from those needed to establish the copyright infringement claim.

The Shepards argue that European Pressphoto Agency's breach of its promise amounts to an extra element that makes the nature of the action qualitatively different from the copyright infringement claim.

The Shepards correctly point out that judges in this district are divided on "whether the promise inherent in every contract is sufficient to establish an 'extra element.'" BroadVision Inc. v. Gen. Elec. Co., No. 08 Civ. 1478 (WHP), 2008 WL 4684114, at *4 (S.D.N.Y. Oct. 15, 2008). The Second Circuit has not decided the issue. See Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 432 (2d Cir. 2012) ("In

-10-

this case, we need not address whether preemption is precluded whenever there is a contract claim, or only when the contract claim includes a promise to pay.").

Some judges follow the holding in <u>American Movie Classics Co. v. Turner Entertainment Co.</u>, 922 F. Supp. 926 (S.D.N.Y. 1996), which held that "a breach of contract claim is preempted if it is merely based on allegations that the defendant did something that the copyright laws reserve exclusively to the plaintiff (such as unauthorized reproduction, performance, distribution, or display)." 922 F. Supp. at 931; <u>see</u> <u>Miller v. Loibl</u>, No. 11 Civ. 2182 (TPG), 2013 WL 967760, at *4 (S.D.N.Y. Mar. 13, 2013) ("defendants' counterclaims allege nothing more than that Miller violated their exclusive distribution rights. That they did so in violation of a contract does nothing to change this conclusion since the infringed contractual right is congruent with a right under copyright law."); <u>Alpha Media Works, Inc. v. Perception Research Servs., Inc.</u>, No. 09 Civ. 9563 (GBD), 2012 WL 406914, at *2 (S.D.N.Y. Feb. 9, 2012) ("The basis of Plaintiff's breach of contract claim is indistinguishable from that of its copyright claim. The breach of contract claim is therefore preempted by the federal Copyright Act."); <u>BroadVision</u>, 2008 WL 4684114, at *4 (dismissing breach of contract claim as "qualitatively the same as a copyright infringement claim"); <u>Price v. Fox Entm't Grp., Inc.</u>,

473 F. Supp. 2d 446, 460-61 (S.D.N.Y. 2007) (dismissing state law claims, including for breach of contract, because "none of these claims include any extra elements that make them qualitatively different from a claim for co-authorship under the Copyright Act."); Tannenbaum v. Corbis Sygma, No. 02 Civ. 5066 (LTS), 2002 WL 31778813, at *3 (S.D.N.Y. Dec. 12, 2002) (dismissing breach of contract claim as it "presents no elements additional to those that are relevant to the Copyright Act.").

Other judges follow the holding in Architectronics, Inc. v. Control Systems, Inc., 935 F. Supp. 425 (S.D.N.Y. 1996), which held that "Protection from breach of contract, however, is not equivalent to copyright protection because a contract claim requires an 'extra element,' that renders the claim qualitatively different from a claim for copyright infringement: a promise by the defendant." 935 F. Supp. at 438 (internal citation omitted); see BanxCorp v. Costco Wholesale Corp., 723 F. Supp. 2d 596, 615 (S.D.N.Y. 2010) ("The Court agrees with the cases that hold that 'the extra element that saves a contract claim from preemption is the promise itself.'"); eScholar, LLC v. Otis Educ. Sys., Inc., 387 F. Supp. 2d 329, 333 (S.D.N.Y. 2005) ("this court agrees that the existence of explicit contractual rights makes a breach of contract claim qualitatively different from a claim for copyright infringement."); Torah Soft, Ltd. v. Drosnin, 224 F. Supp. 2d

-12-

704, 716 (S.D.N.Y. 2002) ("The breach of contract claim here
includes such an extra element: an explicit promise with respect
to future use of the Software."); A. Brod, Inc. v. SK&I Co.
L.L.C., 998 F. Supp. 314, 323 (S.D.N.Y. 1998) ("contract claims
survive preemption to the extent that they involve a breach of a
promise, an element not found in infringement claims."); see
also ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1455 (7th Cir.
1996) ("a simple two-party contract is not 'equivalent to any of
the exclusive rights within the general scope of copyright' and
therefore may be enforced.")

The better approach appears to be that taken by the court
in Canal+ Image UK Ltd. v. Lutvak, 773 F. Supp. 2d 419 (S.D.N.Y.
2011). There, Canal+ owned a copyright in the film "Kind Hearts
and Coronets," a comic adaptation of the novel "Israel Rank."
Canal+, 733 F. Supp. 2d at 425. The parties had entered into a
licensing agreement which authorized the defendants to adapt the
film as a live stage musical presentation. Id. The authorization
extended through October 1, 2004, after which the agreement was
terminated, but the defendants continued with the adaptation. Id.
Canal+ sued for copyright infringement and breach of contract,
and the defendants moved to dismiss the breach of contract claim
as preempted by the Copyright Act. Id. at 426. After analyzing
the various approaches taken by judges in this district and in
other courts, the court held that "whether contract claims are

-13-

preempted by the Copyright Act does not lend itself to a bright-line rule. Rather, whether a given contractual promise renders a claim qualitatively different than a copyright claim must depend on what the promise is." Id. at 444. "[W]ithout referring to what the defendant has promised, a court cannot determine whether, by allegedly breaking the promise, the defendant has engaged in conduct for which the Copyright Act already provides the defendant relief." Id. In Canal+, the defendants breached a promise to produce the musical only within the term that the agreement specified. Id. at 446. Once that term expired, the exclusive right to any adaptation of the film reverted to Canal+. Id. The court held:

> However, that exclusive right flowed from the Copyright Act, not from the Agreement. Thus the claim that Defendants usurped the exclusive right of Canal+ to adapt the Film is nothing more than a claim that Defendants have violated a right of Canal+ under the Copyright Act. Labeling that claim as one for breach of contract cannot change the fact that the claim is not "qualitatively different from a copyright infringement claim." Briarpatch Ltd., 373 F.3d at 305. Rather, the claim merely alleges that Defendants have committed "an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law." Id. Accordingly, the Copyright Act preempts the claim that Defendants' adaption is a breach of contract and that claim is dismissed.

Canal+, 773 F. Supp. 2d at 446.

That holding relied on the Second Circuit's admonition that courts must "take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim,"

-14-

and that preemption turns on "what [the] plaintiff seeks to
protect, the theories in which the matter is thought to be
protected and the rights sought to be enforced." Briarpatch
Ltd., 373 F.3d at 306. "A categorical rule that 'the extra
element that saves a contract claim from preemption is the
promise itself,' Architectronics, 935 F. Supp. at 439, provides
mere lip service to that instruction." Canal+, 773 F. Supp. 2d
at 444.

     That view is also consistent with other cases that both
allowed and disallowed breach of contract claims. American Movie
Classics held that

          a breach of contract claim is preempted if it is merely based
          on allegations that the defendant did something that the
          copyright laws reserve exclusively to the plaintiff (such as
          unauthorized reproduction, performance, distribution, or
          display). However, if the breach of contract claim is based on
          allegations that the parties' contract creates a right not
          existing under copyright law—a right based upon a party's
          contractual promise—and the plaintiff is suing to protect that
          contractual right, then the claim is not preempted. National Car
          Rental System, Inc. v. Computer Assocs. Int'l, Inc., 991 F.2d
          426, 431-433 (8th Cir.), cert. denied, 510 U.S. 861, 114 S. Ct.
          176, 126 L. Ed. 2d 136 (1993) ("contractual restriction [creating
          right not existing under Copyright Act] constitutes an extra
          element that makes this cause of action qualitatively different
          from one for copyright").

922 F. Supp. at 931. There, the allegation was that the
defendant breached the licensing agreement by violating the
plaintiff's exclusive right to exhibit the films in question.
The court found no qualitative difference between the breach of
contract claim, based on the agreement's exclusive exhibition

-15-

right, and the copyright claim, based on the Copyright Act's exclusive right of public performance. Id. at 931-32.

In Stadt v. Fox News Network LLC, 719 F. Supp. 2d 312 (S.D.N.Y. 2010), the court held Stadt's breach of contract claim was not preempted by the Copyright Act because the contract covered activity not protected by the Copyright Act. The court stated:

> Although Fox correctly asserts that preemption would bar a breach of contract claim in which the sole allegation of breach was that defendant used plaintiff's copyrighted work without authorization, Stadt has alleged breach based on more than unauthorized use. The Complaint states that Fox breached by using the "Fox Business Exclusive" credit on the Video in violation of the parties' agreement, and the use of such credits is not expressly governed by the Copyright Act. Thus, because Stadt has adequately pleaded breach of contract based on this provision, Stadt has pleaded an extra element sufficient to survive preemption.

Stadt, 719 F. Supp. 2d at 321; see also Bill Diodato Photography LLC v. Avon Prod., Inc., No. 12 Civ. 847 (RWS), 2012 WL 4335164, at *7 (S.D.N.Y. Sept. 21, 2012) ("Plaintiff has plead a valid breach of contract claim on the theory that Defendant breached its obligation under the agreements by using Plaintiff's images beyond the one-year licensing term without negotiating a fee to be paid to Plaintiff. . . . Plaintiff bears the burden of proving not just that Plaintiff used the images beyond the one-year licensing agreement, but also that Defendant failed to negotiate a fee."); CBS Broad. Inc. v. Counterr Grp., No. 05 Civ. 7946 (DAB), 2008 WL 11350274, at *8 (S.D.N.Y. Aug. 26,

-16-

2008) (dismissing claim that CBS broadcasted video footage in breach of licensing agreement because it is the same as the claim that CBS infringed the owner's exclusive right to perform the work publicly, and distinguishing cases that held contract claims were not preempted where the defendant breached contractual provisions not already protected by copyright law, e.g., failure to pay royalty fees or a percentage of profits).

That is also the approach taken by Professor Nimmer in his treatise on copyright law. See 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1.01[B][1][a][i] (2017) ("pre-emption should be found absent to the extent that a breach of contract cause of action alleges more than simply reproduction (or adaptation, distribution, etc.) of a copyrighted work.").

Here, the Shepards claim that European Pressphoto Agency displayed, reproduced, published, distributed, and otherwise made use of the Shepards' artworks beyond the expiration of the one day term in the license agreement. Compl. ¶ 55. That is conduct that the Copyright Act prohibits and for which it grants remedies. See 17 U.S.C. § 106. European Pressphoto Agency's promise not to infringe the Shepards' copyright is the same as its duty to comply with the copyright law, and is therefore preempted by it.

### 3. Unfair Competition

In this claim the Shepards allege that the defendants, by

-17-

using the Shepards' artworks beyond the scope of the license, and by wrongfully labeling the artworks as their own, misappropriated the Shepards' labor and expenditures, and did so in bad faith, i.e., for a dishonest purpose. Compl. ¶¶ 58-59.

The Second Circuit long ago held that unfair competition claims based on copying of copyrighted materials are preempted by section 301 of the Copyright Act. Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 919 (2d Cir. 1980) ("To the extent that Tomy's unfair competition claim seeks protection against Durham's copying, it is a claim based on a right equivalent to 'exclusive rights within the . . . scope of copyright.' As such, it is defeated by Section 301(a).").

Furthermore, the Copyright Act also preempts claims "asserted under the misappropriation branch of New York's unfair competition law, which generally 'protects against a defendant's competing use of a valuable product or idea created by the plaintiff through investment of time, effort, money and expertise.'" Am. Movie Classics, 922 F. Supp. at 933.

The Shepards argue that, unlike the unfair competition claims in those cases, the claim here is based on the defendants "passing off" the Shepards' artworks as the defendants' original works, and passing off claims are not preempted by the Copyright Act. See Warner Bros. Inc. v. Am. Broad. Cos., Inc., 720 F.2d 231, 247 (2d Cir. 1983) ("to the extent that plaintiffs are

-18-

relying on state unfair competition law to allege a tort of 'passing off,' they are not asserting rights equivalent to those protected by copyright and therefore do not encounter preemption."), citing <u>Nimmer on Copyright</u> §§ 1.01[B][1] n. 47, 2.12 n. 25 (1983); <u>Waldman Publ'g Corp. v. Landoll, Inc.</u>, 848 F. Supp. 498, 505 (S.D.N.Y. 1994) ("one of the elements required for a claim of 'passing off' is the misrepresentation of a common source, which is not an element of a cause of action for copyright.").

But the Shepards' claim, as alleged, is not one for passing off. "Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's." <u>Dastar</u>, 539 U.S. at 27, 123 S. Ct. at 2045 n.1. Such a claim is different from, and therefore not preempted by, copyright infringement law. The Shepards do not allege that the defendants misrepresented their own goods as the Shepards'. Rather, they allege that the defendants misrepresented the Shepards' goods as their own. That is known as "reverse passing of." <u>See</u> <u>id.</u> ("'Reverse passing off,' as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own."). "It is well-settled that a claim for reverse passing off predicated on the theory that defendant's product replicates plaintiff's expressions contains no extra element and is therefore preempted." <u>Silverstein v. Penguin</u>

<u>Putnam</u>, Inc., 522 F. Supp. 2d 579, 608 (S.D.N.Y. 2007), citing <u>Integrative Nutrition, Inc. v. Acad. of Healing Nutrition</u>, 476 F. Supp. 2d 291, 297 (S.D.N.Y. 2007); <u>Am. Movie Classics</u>, 922 F. Supp. at 934 ("This 'reverse passing off' claim is equivalent to a claim for copyright infringement."); <u>Waldman Publ'g Corp.</u>, 848 F. Supp. at 505 (""Where a plaintiff claims that defendant has copied plaintiffs' product and sold it under defendant's name, that claim of reverse passing off is preempted by the Copyright Act."); <u>see</u> 1 <u>Nimmer on Copyright</u> § 1.01[B][1][e] (2017) (a reverse passing off claim "is in fact a disguised copyright infringement claim, and hence preempted.").

## CONCLUSION

Defendants' partial motion to dismiss (Dkt. No. 18) is granted in part and denied in part. The claims for breach of contract and unfair competition are dismissed. In all other respects, the motion is denied.

So ordered.

Dated:   New York, New York
         December 20, 2017

<i>Louis L. Stanton</i>

LOUIS L. STANTON
U.S.D.J.